IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization, et al.<br><br>Plaintiffs,<br><br>v.<br><br>GWINNETT COUNTY, GEORGIA, et al.<br><br>Defendants. | CIVIL ACTION NO.:<br>1:16-cv-02852-AT |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT BY DEFENDANTS GWINNETT COUNTY, GEORGIA AND THE GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS**

In accordance with Local Rule 7.1C, County Defendants submit this reply brief in support of their Motion to Dismiss Plaintiffs' Third Amended Complaint.

## I. SUMMARY OF ARGUMENT

In this case, Plaintiffs ask the Court to grant extraordinary relief under Section 2 of the Voting Rights Act, 52 U.S.C. §10301 ("Section 2") by striking down the 2011 Gwinnett County Commission and School Board plans, which were enacted by the General Assembly seven years ago and will be redrawn following the 2020 Census. In yet a fourth iteration of their complaint and despite specific direction from the Court, Plaintiffs still fail to establish either individual or associational

1

standing or to state a vote dilution claim under Section 2. For those reasons, all Defendants have moved for dismissal of Plaintiffs' Third Amended Complaint.[1]

In response to those motions, Plaintiffs maintain that the additional allegations in their Third Amended Complaint "provide all of the information directed by the Court, and they far exceed the normal threshold for any voting rights case, including coalition cases brought under Section 2." [Doc. 186 at 2]. Granted, Plaintiffs complied with the Court's first directive and specified the Commission and School Board districts in which the individual Plaintiffs reside. [Doc. 76 at 2]. However, the Court also required Plaintiffs to "identify the districts in which individual representative members of the Georgia NAACP and GALEO reside and allege, if applicable, whether there has been vote dilution in these districts[.]" *Id.* Plaintiffs instead alleged that the Georgia State Conference of the NAACP ("Georgia NAACP") and the Georgia Association of Latino Elected Officials ("GALEO") have members in *every* district and that *every* district is "dilutive." [Doc. 144-1, ¶¶ 16-

---

[1] County Defendants remain mindful that, in ruling on the original motions to dismiss, the Court rejected Defendants' argument that Section 2 claims may not be brought by a coalition of multiple minorities as a matter of law. [Doc. 87 at 4]. Furthermore, at the hearing on the motions, the Court indicated that it did not agree with County Defendants' argument that laches bars Plaintiffs' claim. [4/17/2017 Transcript, p. 6]. Therefore, while County Defendants respectfully disagree, they do not repeat those arguments on their renewed motion to dismiss but instead will address them in the context of summary judgment should the case proceed.

2

17]. Noticeably absent is any mention of Asian-Americans or any association claiming to represent them.

Plaintiffs' contention that the allegations of the Third Amended Complaint "far exceed the normal threshold" for voting rights cases simply does not square with reality. The "normal threshold" for a Section 2 vote dilution complaint is that it state (1) which district is diluted, (2) that the plaintiff lives in that district and is therefore harmed, and (3) how the harm can be cured, *i.e.*, what the remedial district is.  Here, Plaintiffs still do not say *which specific* districts are allegedly diluted (and why) but instead make the generalized claim that *all* the Commission districts are "dilutive." [Doc. 144-1, ¶ 16]. They still do not know how many remedial districts they seek, what the minority composition of those districts would be, or whether Plaintiffs will benefit from such remedial districts. Those deficiencies demonstrate Plaintiffs' continued failure to establish standing.

Even if Plaintiffs have sufficiently pled standing, they do not state a Section 2 claim.  As with the First and Second Amended Complaints, the Third Amended Complaint seeks remedies that are impermissible under Section 2 because they require much more than minimal change to the existing districts and do not offer a remedy to all members of the combined minority group Plaintiffs claim to represent. Furthermore, the remedial Commission plan preferred by Plaintiffs calls for a change in the form of the County's government.

## II.     ARGUMENT AND CITATION OF AUTHORITIES

**A.     PLAINTIFFS LACK STANDING TO BRING A SECTION 2 CLAIM AGAINST COUNTY DEFENDANTS AND SO THEIR THIRD AMENDED COMPLAINT SHOULD BE DISMISSED UNDER FRCP 12(B)(1).**

In responding to County Defendants' motion to dismiss, Plaintiffs do not dispute that, as the parties invoking this Court's jurisdiction, they bear the burden to establish standing. Plaintiffs also agree with County Defendants that for the Court to have jurisdiction, an associational plaintiff must apply the three-part test from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) to determine standing: a "concrete and particularized injury" to the plaintiff's legally protected interest; a causal connection between the plaintiff's injury and conduct "fairly traceable" to the defendant; and the claimed injury is likely to be remedied by a favorable decision to plaintiff. [Doc. 186, pp. 4-5]. Finally, Plaintiffs and County Defendants both cite *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), as the standard for determining associational standing. *Id.* at 17.

The parties' agreement as to standing ends there. In their motion to dismiss, County Defendants assert that the associational Plaintiffs lack standing because they do not meet the first and second requirements of *Hunt*: their members do not otherwise have standing to sue to bring a multiple minority coalition claim in their own right, and the associations do not seek to protect interests germane to their purposes here. [Doc. 170-1 at 11-14]. In response, Plaintiffs claim that there is no

4

precedent to support "the arbitrary and unworkable requirement" that the associational Plaintiffs equally represent the interests of the racial minority groups who filed this case. [Doc. 186 at 17].

To the contrary, *Hunt* requires precisely that. An associational plaintiff can bring only those claims that *its members* could otherwise bring. *Hunt,* 432 U.S. at 343. Surely, Plaintiffs are not suggesting that members of the Georgia NAACP and GALEO are all individually authorized to bring claims on behalf of Black, Hispanic, and/or Asian-American voters or to obtain relief that may – or may not[2] – benefit them all. If such were the case, that would mean that Plaintiffs did not need to name individual voters in each of the challenged districts, which is clearly not the law. *United States v. Hays*, 515 U.S. 737, 744 (1995); *Wright v. Dougherty Cnty.*, 358 F.3d 1352, 1355-56 (11th Cir. 2004); *Broward Citizens for Fair Districts v. Broward Cnty.*, 2012 WL 1110053 (N.D. Fla., April 3, 2012).

In addition to being restricted to claims that its members could make individually, associational plaintiffs must seek to protect interests germane to their purpose. *Hunt,* 432 U.S. at 343. After arguing that it is an "arbitrary and unworkable requirement" that the Georgia NAACP and GALEO represent all the minority

---

[2] Plaintiffs alternatively seek remedial "majority-minority" districts which include all the specified minority groups or only two of those groups in different combinations. [Doc. 144-1, ¶¶ 16-17, 18-19, 21-22, 25, 125, Prayer for Relief, ¶(e)].

interests at issue, [Doc. 186 at 17], in an effort to meet the second prong of *Hunt*, Plaintiffs contend that they do, in fact, represent all those interests.[3] *Id.*

Plaintiffs also argue that there is "ample precedent" for the Georgia NAACP and GALEO to have standing to be organizational plaintiffs in Section 2 coalition cases. None of the cases cited by Plaintiffs, however, stand for the proposition they seek to establish here: that any minority organization has associational standing to assert the claims of minority voters who are not members of the organization and to seek remedies not germane to the association's purposes. *See Concerned Citizens of Hardee Cnty. v. Hardee Cnty Bd. of Comm'rs*, 906 F.2d 524, 525 (11th Cir. 1990) (vote dilution claim brought on behalf of black voters and NAACP was an associational plaintiff); *Bridgeport Coal. for Fair Representation v. City of Bridgeport*, 26 F.3d 271 (2d Cir. 1994), *vacated on other grounds*, 512 U.S. 1283 (1994) (vote dilution claim brought on behalf of black and Hispanic voters; organizational plaintiffs claimed to represent – separately – the interests of the distinct minority groups); *LULAC v. Midland Indep. Sch. Dist.*, 812 F.2d 1494 (5th Cir. 1987) (same).

---

[3] In their response to the current motions to dismiss, Plaintiffs now appear also to argue that the Georgia NAACP represents all people and therefore necessarily has associational standing to bring a Section 2 claim as to all the districts. [Doc. 186 at 3]. That argument is simply wrong, as associational plaintiffs do not have standing to represent the world at-large; they can only assert standing on behalf of their members. *Hunt*, 432 U.S. at 343.

The members of the Georgia NAACP and GALEO cannot, in their own right, sue to obtain the variety of remedies sought for their coalition, *i.e.*, either one or two remedial districts, which are alternately comprised of several different combinations of the three minority groups. Further, despite the Plaintiffs' contention in their response that the two organizations represent the interests of all the minority groups at issue (and that the NAACP represents the interests of all people), the Third Amended Complaint clearly states that the organizations' purposes are directed toward the interests of African-Americans (NAACP) and Latinos (GALEO). [Doc. 144-1, ¶¶ 16-17]. Under *Hunt,* the two groups do not have associational standing to pursue the multiple-minority coalition claim.

Likewise, the individual Plaintiffs do not have standing to pursue such a claim. Contrary to Plaintiffs' assertion in their response, the allegations of the Third Amended Complaint do not demonstrate personalized harm to the individual Plaintiffs.

As an initial matter, Plaintiffs argue in a footnote that, at this stage, they are not required to show standing on the part of every Plaintiff. Citing *Public Citizen, Inc. v. Miller*, 992 F.2d 1548 (11th Cir. 1992), Plaintiffs note that if a court concludes that even one plaintiff has standing to pursue all the claims asserted, that is sufficient at the pleading stage. [Doc. 186 at 8, n.2]. While that is a correct statement from *Public Citizen*, it is not applicable here. Plaintiffs have asserted a vote dilution claim

7

in every Commission district on behalf of a multiple minority coalition. *Public Citizen*'s allowance for shared standing cannot be utilized in this case because there is no one Plaintiff who has standing to pursue the tripartite majority claim in four allegedly diluted districts. Each Plaintiff must have standing and thus must have suffered an individualized harm.

Plaintiffs' decision to identify *every* Commission district as being "dilutive" defeats their claim of individualized harm. While the Court must accept Plaintiffs' allegations as true,

> [a]t the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin*, 490 U.S. 422, 501-02 (1975). This Court has given Plaintiffs every opportunity to do what plaintiffs in Section 2 vote dilution cases must do to assert harm: identify the allegedly diluted district and assert their residence in that district. Plaintiffs chose instead to continue to make the broad assertion that all four Commission districts and four of the five School Board districts are diluted.

Plaintiffs further contend that there is no requirement that they allege that they live in a diluted district. [Doc. 186 at 12-13]. Plaintiffs' argument makes no sense in light of their claim. Their claim is that as a *group* of Black/Hispanic/Asian-

8

American voters, their collective votes are being diluted in each of their Commission districts. How can they make a claim of individualized harm to themselves as members of a minority coalition if there is not at least one plaintiff from each minority group residing and voting in each district?

The only binding caselaw cited by Plaintiffs, *Baker v. Carr*, 369 U.S. 204 (1962), does not instruct otherwise. In *Baker*, the Supreme Court found standing on the part of voters from five counties who challenged the *statewide* system (or lack thereof) for reapportioning the Tennessee state legislature after a Census. 369 U.S. at 205-06.[4] Those voters claimed they had less representation than voters in other counties and brought their claim on behalf of themselves and those similarly situated, *i.e.*, similarly harmed, to change the statewide process.

Although Plaintiffs correctly note that Rule 8 does allow pleading in the alternative, [Doc. 186 at 3], that rule also "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' vague assertions of harm everywhere amount to no more than such an insufficient accusation of harm.

---

[4] To the extent that *Baker v. Carr* might be read to suggest statewide or county-wide standing, any such reading should be rejected in the light of *United States v. Hays*, 515 U.S. 737 (1995), and its progeny, which require that the challenger to a representative district live in that district.

9

Plaintiffs must also allege that injury will *likely* be redressed by a favorable decision. *Wright,* 358 F.3d at 1355; *see also United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 687 (1973) ("Of course, pleadings must be something more than an ingenious academic exercise in the conceivable."). In the Third Amended Complaint, Plaintiffs allege that they could reside in a purported remedial district but then offer three different forms of "remedial districts," each also composed of several different minority combinations.

In their response, Plaintiffs argue that they are not required to produce any remedial plans at this point in the litigation or to devise the final remedy at this stage. [Doc. 184 at 18-21]. Plaintiffs miss the point. They complain of districts that are "dilutive," and so the remedy must be districts that are not. The standing requirement requires them to show there is a likely remedy, not just to say it.

Plaintiffs' Third Amended Complaint should be dismissed under FRCP 12(b)(1). Neither the individual Plaintiffs nor the associational Plaintiffs has standing to bring their claim, and the Court therefore lacks required subject matter jurisdiction.

### B.   PLAINTIFFS FAIL TO STATE A SECTION 2 CLAIM AGAINST COUNTY DEFENDANTS, AND THEIR CLAIM SHOULD BE DISMISSED UNDER FRCP 12(B)(6).

County Defendants also ask the Court to dismiss the Third Amended Complaint under FRCP 12(b)(6) because Plaintiffs fail to state a Section 2 claim.

10

Specifically, none of the proposed remedies is viable or proper.

First, as discussed in County Defendants' opening brief, the remedies proposed by Plaintiffs do not each address the alleged harm to the combined minority group. [Doc. 170-1 at 16]. In short, some of the remedies leave out one of the minority groups alleged to be part of the coalition. That is hardly a viable remedy for the alleged injury of the coalition.

Plaintiffs do not address this argument presumably because they cannot dispute it. The Third Amended Complaint makes clear that some of the remedies proposed to cure the alleged dilution of this multiple minority *would not* include one of the racial minority groups or one of the language minority groups. In that case, the "remedy" proposed by the minority coalition would not be a viable or proper remedy for all members of the coalition. As such, Plaintiffs cannot establish a *prima facie* case under Section 2. *See, e.g., Davis v. Chiles*, 139 F.3d 1414, 1423 (11th Cir. 1998); *Southern Christian Leadership Conf. v. Sessions*, 56 F.3d 1281, 1294-97 (11th Cir. 1995) (en banc); *Nipper v. Smith*, 39 F.3d. 1494, 1530-31 (11th Cir. 1994).

Second, County Defendants have asserted that the proposed remedies are not viable or proper because they would not be "minimum change" plans. Plaintiffs respond that the Court need not consider the "minimum change" rule yet because it does not apply to the "preliminary plan" offered to show the first factor from *Thornburg v. Gingles,* 478 U.S. 30 (1986), [Doc. 186 at 22], *i.e.*, that the minority

11

population is sufficiently numerous and geographically compact to form the majority in a single member district.

Plaintiffs' argument is a distinction without a difference. The Eleventh Circuit prohibits the separation of the first prong of liability under *Gingles* and the potential remedy. *Nipper*, 39 F.3d at 1530-31; *see also Burton v. City of Belle Glade*, 178 F.3d 1175, 1199 (11th Cir. 1999) ("We have repeatedly construed the first *Gingles* factor as requiring a plaintiff to demonstrate the existence of a proper remedy."). Whatever plan is used to demonstrate the violation of the first prong of *Gingles* must also be a remedy that can be imposed by the Court. *Nipper*, 39 F.3d at 1530-31. In short, if a plaintiff cannot show that the plan used to demonstrate the first prong can also be a proper remedy, then the plaintiff has not shown compliance with the first prong of *Gingles*. *Id*.

Third and finally, County Defendants seek dismissal because, in proposing a five-member plan or a four-member, one at-large plan without specifying that the chairman would continue to be elected at-large, Plaintiffs propose yet another impermissible remedy. Plaintiffs finally state in their response that with respect to the four-member proposed plan, they intend for that plan to include the election of the chair at-large. [Doc. 186 at 23]. Plaintiffs take County Defendants to task for not "approaching Plaintiffs regarding the possibility of amending the purportedly infirm language." [Doc. 186 at 23, n. 7]. However, County Defendants note that they

12

made this argument three times before Plaintiffs stated their position on it. County Defendants raised the issue in their first motion to dismiss, in their reply brief, and on the opening brief for the second motion to dismiss. Plaintiffs chose not to address the question in their response to the first motion to dismiss nor clarify their position in the Second or Third Amended Complaint.

While County Defendants appreciate that Plaintiffs have now clarified that point on the 4-1 remedial proposal, Plaintiffs still insist that they want a new plan with five single-member districts. Such a remedy would constitute a change in the form of government that now exists, as the at-large chair position would become a district position. [Doc. 60 at 25-29]. As discussed previously and as Plaintiffs concede, [Doc. 144-1, ¶¶ 78-79], the current Commission plan with four districts members and a Chairman elected at-large is state law. The imposition of a Commission made up of five district commissioners, along with the necessary change in the selection of a Chairman, are impermissible changes in the form of Gwinnett County's government. *Nipper* 39 F.3d. at 1531 ("Implicit in this first *Gingles* requirement is a limitation on the ability of a federal court to abolish a particular form of government and to use its imagination to fashion a new system. Nothing in the Voting Rights Act suggests an intent on the part of Congress to permit the federal judiciary to force on the states a new model of government; moreover, from a pragmatic standpoint, federal courts simply lack legal standards for choosing

among alternatives."); *see also Dillard v. Baldwin County Comm'rs*, 376 F. 3d 1260, 1268 (11th Cir. 2004).

In *Wilson v. Jones*, 45 F. Supp. 2d 945 (S.D. Ala. 1999), the District Court held that a 1988 order removing the Probate Judge of Dallas County, Alabama, from his position as at-large chair of the County Commission and turning that seat into a single-member district exceeded the court's remedial powers. Applying *Holder v. Hall*, 512 U.S. 874 (1994), the court explained, "The removal of the Probate Judge as chairman *ex officio* of the Dallas County Commission and his replacement by a fifth commissioner constituted nothing more or less then judicial overreaching and is impermissible under the law." *Id*. at 960.

The Eleventh Circuit affirmed the district court's judgment. *Wilson v. Minor*, 220 F. 3d 1297 (11th Cir. 2000). It observed that the proposition that "[a] federal court cannot modify the size of an elected governing body in order to remedy a Section 2 violation" was "now clear and undisputed" as a matter of law. *Id*. at 1305. The removal of the Probate Judge as *ex officio* chair and his replacement by a fifth commissioner elected from a single-member district was such an impermissible change. As the court concluded, "[B]ecause the differences between the role of the probate judge acting as chairperson of the Commission in an ex officio capacity and the role of a full Commission member are indeed substantial and important, the district court did not clearly err in finding that the 1988 injunction changed the size

of the Dallas County Commission." *Id*. at 1307.[5]

The Court should so hold and dismiss this portion of the Plaintiffs' Third Amended Complaint.

### III.   CONCLUSION

Plaintiffs are obviously still attempting to develop their novel claim, but their Third Amended Complaint does not cure the deficiencies in the prior complaint. They still lack standing, both as associations and individuals, to bring the coalitional claim they assert. They still fail to state a claim because the myriad of remedies they propose are not viable or proper. Some of the remedies do not include all the Plaintiffs. All the proposals require that every district be changed. Last, but certainly not least, Plaintiffs propose remedies that would alter the form of government in Gwinnett County by making the Chairman – a full-time County employee – one of five district commissioners and by creating an automatic change in the selection of the Chairman in a five single-member district plan.

For these reasons, Plaintiffs' Third Amended Complaint should be dismissed.

---

[5] The Eleventh Circuit also rejected the Dallas County Defendants' reliance on *Dillard v. Crenshaw County Comm'n*, 831 F. 3d 246 (11th Cir. 1987), which Plaintiffs cite. [Doc. 186 at 24]. Plaintiffs' reading of *Dillard* and *Wilson* is incorrect, at best. As the Eleventh Circuit explained, "[W]e find that the difference in role, purpose, and power between the probate judge acting as chairperson of the Commission in an ex officio capacity and a full Commission member as significant and compel us to conclude that the 1988 injunction effectively changed the size of the Dallas County Commission." *Wilson*, 220 F. 3d at 1309.

This 29th day of November, 2017.

/s/ Frank B. Strickland
Frank B. Strickland
Georgia Bar No. 687600
fbs@sbllaw.net
John J. Park, Jr.
Georgia Bar No. 547812
jjp@sbllaw.net
Barclay S. Hendrix
Georgia Bar No. 917852
Barclay.hendrix@sbllaw.com
STRICKLAND BROCKINGTON
 LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
(678)347-2200

Richard A. Carothers
Georgia Bar No. 111075
richard.carothers@carmitch.com
Brian R. Dempsey
Georgia Bar No. 217596
Brian.dempsey@carmitch.com
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA 30518
(770) 932-3552

*Attorneys for Defendants Gwinnett County, Georgia and the Gwinnett County Board of Registrations and Elections*

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief has been prepared in a Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

s/ Frank B. Strickland
Frank B. Strickland
Georgia Bar No. 687600

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; et al.<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>GWINNETT COUNTY BOARD OF COMMISSIONERS; et al.<br><br>　　　　　　Defendants. | CIVIL ACTION NO.:<br>1:16-cv-02852-AT |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this date electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT BY DEFENDANTS GWINNETT COUNTY, GEORGIA AND THE GWINNETT COUNTY BOARD OF REGISTRATIONS AND ELECTIONS** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Brian J. Sutherland
Edward D. Buckley
Clifford Zatz
April N. Ross
Ezra David Rosenberg
Julie Houk
John Powers
Allan Leroy Parks, Jr.
Andrew Yancey Coffman
E. Victoria Sweeny
W. Creighton Lancaster

This 29th day of November, 2017.

<u>s/ Frank B. Strickland</u><br>
Frank B. Strickland<br>
Georgia Bar No. 687600

STRICKLAND BROCKINGTON LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
fbs@sbllaw.net